# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALBERT EINSTEIN HEALTHCARE NETWORK<br>d/b/a ALBERT EINSTEIN MEDICAL CENTER<br>5501 Old York Road<br>Philadelphia, Pennsylvania 19141 | ) ) ) ) ) | |
| ALBERT EINSTEIN HEALTHCARE NETWORK<br>d/b/a MONTGOMERY HOSPITAL<br>1301 Powell Street<br>Norristown, Pennsylvania 19404 | ) ) ) ) ) | Civil Action No._____ |
| BAYSTATE MARY LANE HOSPITAL CORPORATION<br>85 South Street<br>Ware, Massachusetts 01082 | ) ) ) ) | |
| BAYSTATE MEDICAL CENTER, INC.<br>759 Chestnut Street<br>Springfield, Massachusetts 01199 | ) ) ) ) | |
| BEDFORD MEMORIAL HOSPITAL<br>1613 Oakwood Street<br>Bedford, Virginia 24523 | ) ) ) ) | |
| BETH ISRAEL DEACONESS MEDICAL CENTER, INC.<br>330 Brookline Avenue<br>Boston, Massachusetts 02215 | ) ) ) ) | |
| CARILION FRANKLIN MEMORIAL HOSPITAL<br>180 Floyd Avenue<br>Rocky Mount, Virginia 24151 | ) ) ) ) | |
| CARILION MEDICAL CENTER<br>1906 Believe Avenue SE<br>Roanoke, Virginia 24033 | ) ) ) ) | |
| CARILION NEW RIVER VALLEY MEDICAL CENTER<br>2900 Lamb Circle<br>Christiansburg, Virginia 24073 | ) ) ) ) | |
| COOLEY DICKINSON HOSPITAL, INC.<br>30 Locust Street<br>Northampton, Massachusetts 01061 | ) ) ) | |

FRICK HOSPITAL                                          )
508 Church Street                                       )
Mount Pleasant, Pennsylvania 15666                      )
                                                        )
INOVA HEALTH CARE SERVICES d/b/a INOVA                  )
ALEXANDRIA HOSPITAL                                     )
4320 Seminary Road                                      )
Alexandria, Virginia 22315                              )
                                                        )
INOVA HEALTH CARE SERVICES d/b/a INOVA                  )
FAIRFAX HOSPITAL                                        )
3300 Gallows Road                                       )
Falls Church, Virginia 22042                            )
                                                        )
LATROBE AREA HOSPITAL, INC.                             )
1 Mellon Way                                            )
Latrobe, Pennsylvania 15650                             )
                                                        )
LOUDOUN HOSPITAL CENTER d/b/a INOVA                     )
LOUDOUN HOSPITAL CENTER                                 )
44045 Riverside Parkway                                 )
Leesburg, Virginia 20176                                )
                                                        )
MAGEE WOMENS HOSPITAL OF UPMC d/b/a                     )
UPMC MAGEE-WOMENS HOSPITAL                              )
300 Halket Street                                       )
Pittsburgh, Pennsylvania 15213                          )
                                                        )
MEMORIAL HERMANN HEALTH SYSTEM d/b/a                    )
MEMORIAL HERMANN HOSPITAL SYSTEM                        )
1635 North Loop West                                    )
Houston, Texas 77074                                    )
                                                        )
MEMORIAL HERMANN HEALTH SYSTEM d/b/a                    )
MEMORIAL HERMANN KATY HOSPITAL                          )
23900 Katy Freeway                                      )
Katy, Texas 77494                                       )
                                                        )
MEMORIAL HERMANN HEALTH SYSTEM d/b/a                    )
MEMORIAL HERMANN MEMORIAL CITY MEDICAL                  )
CENTER                                                  )
921 Gessner Road                                        )
Houston, Texas 77024                                    )

MEMORIAL HERMANN HEALTH SYSTEM d/b/a    )
MEMORIAL HERMANN NORTHEAST    )
18951 Memorial North    )
Humble, Texas 77338    )
    )
MEMORIAL HERMANN HOSPITAL SYSTEM d/b/a    )
MEMORIAL HERMANN-TEXAS MEDICAL CENTER    )
6411 Fannin Street    )
Houston, Texas 77030    )
    )
MORTON HOSPITAL, A STEWARD FAMILY    )
HOSPITAL, INC. d/b/a MORTON HOSPITAL    )
88 Washington Street    )
Tauton, Massachusetts 02780    )
    )
MORTON PLANT HOSPITAL ASSOCIATION, INC.    )
d/b/a MORTON F. PLANT HOSPITAL    )
300 Pinellas Street    )
Clearwater, Florida 33756    )
    )
MORTON PLANT HOSPITAL ASSOCIATION, INC.    )
d/b/a MORTON PLANT NORTH BAY HOSPITAL    )
6600 Madison Street    )
New Port Richey, Florida 34652    )
    )
MOUNT AUBURN HOSPITAL    )
330 Mount Auburn Street    )
Cambridge, Massachusetts 02238    )
    )
NEWPORT HOSPITAL    )
11 Friendship Street    )
Newport, Rhode Island 02840    )
    )
NORTH SHORE MEDICAL CENTER, INC.    )
81 Highland Avenue    )
Salem, Massachusetts 01970    )
    )
ORLANDO HEALTH CENTRAL, INC. d/b/a    )
HEALTH CENTRAL    )
10000 West Colonial Drive    )
Ocoee, Florida 34761    )
    )
ORLANDO HEALTH, INC.    )
1414 Kuhl Avenue    )
Orlando, Florida 32806    )

PRESBYTERIAN MEDICAL CENTER OF THE          )
UNIVERSITY OF PENNSYLVANNIA HEALTH          )
SYSTEM d/b/a PREBYTERIAN MEDICAL CENTER     )
39th & Market Streets                       )
Philadelphia, Pennsylvania 19104            )
                                            )
PROSPECT CCMC, LLC d/b/a CROZER CHESTER      )
MEDICAL CENTER                              )
1 Medical Center Boulevard                  )
Upland, Delaware 19013                      )
                                            )
PROSPECT DCMH, LLC d/b/a DELAWARE COUNTY     )
MEMORIAL HOSPITAL                           )
501 North Landsowne Avenue                  )
Drexel Hill, Pennsylvania 19026             )
                                            )
QUINCY MEDICAL CENTER, A STEWARD FAMILY      )
HOSPITAL, INC. d/b/a QUINCY MEDICAL CENTER    )
114  Whitwell Street                        )
Quincy, Massachusetts 02169                 )
                                            )
RHODE ISLAND HOSPITAL                       )
593 Eddy Street                             )
Providence, Rhode Island 02903              )
                                            )
SOUTH FLORIDA BAPTIST HOSPITAL, INC.        )
301 North Alexander Street                  )
Plant City, Florida 33564                   )
                                            )
SOUTH LAKE HOSPITAL, INC.                   )
1900 Don Wickham Drive                      )
Claremont, Florida 34711                    )
                                            )
ST. ANTHONY'S HOSPITAL, INC.                )
1200 7th Avenue North                       )
St. Petersburg, Florida 33705               )
                                            )
ST. JOSEPH'S HOSPITAL, INC.                 )
3001 West. Martin Luter King Junior Boulevard )
Tampa, Florida 33607                        )
                                            )
STEWARD CARNEY HOSPITAL, INC.               )
2100 Dorchester Avenue                      )
Dorchester, Massachusetts 02124             )

STEWARD HOLY FAMILY HOSPITAL, INC. d/b/a    )
HOLY FAMILY HOSPITAL    )
70 East Street    )
Methuen, Massachusetts 01844    )
    )
STEWARD GOOD SAMARITAN MEDICAL    )
CENTER, INC. d/b/a GOOD SAMARITAN    )
MEDICAL CENTER    )
235 North Pearl Street    )
Brockton, Massachusetts 02301    )
    )
STEWARD ST. ANNE'S HOSPITAL CORPORATION    )
d/b/a STEWARD ST. ANNE'S HOSPITAL    )
795 Middle Street    )
Fall River, Massachusetts 02721    )
    )
STEWARD ST. ELIZABETH'S MEDICAL CENTER OF    )
BOSTON, INC. d/b/a STEWARD ST. ELIZABETH'S    )
MEDICAL CENTER    )
736 Cambridge Street    )
Boston, Massachusetts 02135    )
    )
SUNY HEALTH SCIENCE CENTER AT BROOKLYN    )
UNIVERSITY HOSPITAL OF BROOKLYN d/b/a    )
UNIVERSITY HOSPITAL OF BROOKLYN    )
445 Lenox Road    )
Brooklyn, New York 11203    )
    )
SUNY HEALTHSCIENCE CENTER AT SYRACUSE    )
750 East Adams Street    )
Syracuse, New York 13210    )
    )
THE BRIGHAM AND WOMEN'S FAULKNER    )
HOSPITAL, INC. d/b/a FAULKNER HOSPITAL    )
1153 Centre Street    )
Jamaica Plain, Massachusetts 02130    )
    )
THE BRIGHAM AND WOMEN'S HOSPITAL, INC.    )
75 Francis Street    )
Boston, Massachusetts 02115    )
    )
THE CHAMBERSBURG HOSPITAL    )
112 North Seventh Street    )
Chambersburg, Pennsylvania 17201    )

THE MASSACHUSETTS GENERAL HOSPITAL )
55 Fruit Street )
Boston, Massachusetts 02114 )
)
THE MIRIAM HOSPITAL )
164 Summit Avenue )
Providence, Rhode Island 02906 )
)
THE PENNSYLVANIA HOSPITAL OF THE )
UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM )
d/b/a PENNSYLVANIA HOSPITAL )
8th and Spruce Streets )
Philadelphia, Pennsylvania 19107 )
)
THE TRUSTEES OF THE UNIVERSITY OF )
PENNSYLVANIA d/b/a HOSPITAL OF THE )
UNIVERSITY OF PENNSYLVANIA )
3400 Spruce Street )
Philadelphia, Pennsylvania 19104 )
)
TRUSTEES OF MEASE HOSPITAL, INC. d/b/a )
MEASE HOSPITAL AND CLINIC )
601 Main Street )
Dunedin, Florida 34698 )
)
TRUSTEES OF MEASE HOSPITAL, INC. d/b/a )
MEASE HOSPITAL COUNTRYSIDE )
3231 North Mcmullen Booth Road )
Safety Harbor, Florida 33761 )
)
UNIVERSITY HOSPITAL AT STONY BROOK d/b/a )
STONY BROOK UNIVERSITY HOSPITAL )
100 Nicolls Road )
Stony Brook, New York 11794 )
)
UPMC ALTOONA d/b/a ALTOONA REGIONAL )
HEALTH SYSTEM )
620 Howard Avenue )
Altoona, Pennsylvania 16601 )
)
UPMC BRADDOCK d/b/a UPMC-BRADDOCK )
HOSPITAL )
400 Holland Avenue )
Braddock, Pennsylvania 15104 )

UPMC HAMOT d/b/a HAMOT MEDICAL CENTER    )
201 State Street                         )
Erie, Pennsylvania 16550                 )
                                         )
UPMC HORIZON                             )
110 North Main Street                    )
Greenville, Pennsylvania 16125           )
                                         )
UPMC MCKEESPORT d/b/a MCKEESPORT HOSPITAL )
1500 Fifth Avenue                        )
McKeesport, Pennsylvania 15132           )
                                         )
UPMC MERCY d/b/a UPMC MERCY HOSPITAL     )
1400 Locust Street                       )
Pittsburgh, Pennsylvania 15219           )
                                         )
UPMC NORTHWEST                           )
100 Fairfield Drive                      )
Seneca, Pennsylvania 16346               )
                                         )
UPMC PRESBYTERIAN SHADYSIDE HOSPITAL     )
200 Lothrop Street                       )
Pittsburgh, Pennsylvania 15213           )
                                         )
UPMC SOUTH SIDE                          )
200 Lothrop Street                       )
Pittsburgh, Pennsylvania 15213           )
                                         )
WAYNESBORO HOSPITAL                      )
501 East Main Street                     )
Waynesboro, Pennsylvania 17268           )
                                         )
WESTMORELAND REGIONAL HOSPITAL           )
532 West Pittsburg Street                )
Greensburg, Pennsylvania 15601           )
                                         )
WINTER HAVEN HOSPITAL, INC.              )
200 Avenue F, NE                         )
Winter Haven, Florida 33881              )
                                         )
              Plaintiffs,                )
                                         )
        v.                               )

THOMAS E. PRICE, Secretary,                    )
United States Department of                    )
Health and Human Services,                     )
200 Independence Ave., S.W.                     )
Washington, DC 20201,                          )
                                               )
                    Defendant.                 )
_____)

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY
## AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT

### NATURE OF ACTION

1.      This case concerns the proper treatment in the calculation of the Medicare disproportionate share hospital ("DSH") payment of inpatient hospital days for patients who were enrolled in a Medicare Advantage plan under part C of the Medicare Act.  The ultimate issue is whether Medicare "enrollees in Part C are 'entitled to benefits' under Part A, such that they should be counted in the Medicare [part A/SSI] fraction [one part of the DSH payment formula], or whether, if not regarded as 'entitled to benefits under Part A,' they should instead be included in the Medicaid fraction [the second part of the DSH payment calculus]."  *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1105 (D.C. Cir. 2014) ("*Allina I*").  In *Allina I*, the D.C. Circuit affirmed this Court's decision declaring invalid and vacating a procedurally invalid rule, adopted in 2004, which changed the defendant Secretary's policy on the treatment of part C days to include them the Medicare part A/SSI fraction and exclude them from the numerator of the Medicaid fraction used to calculate the DSH payment.  *Id.* at 1111.

2.      Although three years have now passed since the *Allina I* decision, the Secretary has not acquiesced in the D.C. Circuit's decision in *Allina I*.  Instead, the Secretary's agency has continued to apply the 2004 rule and part C days policy adopted in that rule, including in the payment determinations at issue for the plaintiff hospitals in this case.

3.    The continued application of 2004 rule and the part C policy adopted in that rule is both procedurally invalid, as the D.C. Circuit has already ruled, and is substantively invalid as well.   The only path open to the agency to apply the policy adopted in the 2004 rule would require notice-and-comment rulemaking, which the agency has not done with respect to the periods at issue.   Moreover, the part C policy adopted in the 2004 rule change fails any test of reasoned decision-making and is inconsistent with congressional intent.   The plaintiff hospitals, therefore, seek an order setting aside the Secretary's DSH payment determinations and directing the Secretary to recalculate the plaintiff hospitals' DSH payments by excluding part C days from the Medicare part A/SSI fraction and including the Medicaid-eligible portion of those days in the numerator of the Medicaid fraction.

## JURISDICTION AND VENUE

4.    This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.

5.    Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(l).

6.    Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(l).

## PARTIES

7.    The plaintiff hospitals in this action and hospital fiscal years at issue are:

1.   Albert Einstein Healthcare Network d/b/a Albert Einstein Medical Center, Medicare Provider No. 39-0142, fiscal year ending June 30, 2008;

2.   Albert Einstein Healthcare Network d/b/a Montgomery Hospital, Medicare Provider No. 39-0108, fiscal year ending June 30, 2008;

3.   Baystate Mary Lane Hospital Corporation, Medicare Provider No. 22-0050, fiscal years ending September 30, 2008 and September 30, 2009;

4.   Baystate Medical Center, Inc., Medicare Provider No. 22-0077, fiscal years ending September 30, 2008 and September 30, 2009;

5.  Bedford Memorial Hospital, Medicare Provider No. 49-0088, fiscal year ending September 30, 2008;

6.  Beth Israel Deaconess Medical Center, Inc., Medicare Provider No. 22-0086, fiscal years ending September 30, 2008 and September 30, 2009;

7.  Carilion Franklin Memorial Hospital, Medicare Provider No. 49-0089, fiscal year ending September 30, 2008;

8.  Carilion Medical Center, Medicare Provider No. 49-0024, fiscal year ending September 30, 2008;

9.  Carilion New River Valley Medical Center, Medicare Provider No. 49-0042, fiscal year ending September 30, 2008;

10. Cooley Dickinson Hospital, Inc., Medicare Provider No. 22-0015, fiscal year ending September 30, 2008;

11. Frick Hospital, Medicare Provider No. 39-0217, fiscal years ending June 30, 2010 and June 30, 2011;

12. Inova Health Care Services d/b/a Inova Alexandria Hospital, Medicare Provider No. 49-0040, fiscal year ending December 31, 2007;

13. Inova Health Care Services d/b/a Inova Fairfax Hospital, Medicare Provider No. 49-0063, fiscal years ending December 31, 2006 and December 31, 2007;

14. Latrobe Area Hospital, Medicare Provider No. 39-0219, fiscal years ending June 30, 2010 and June 30, 2011;

15. Loudon Hospital Center d/b/a Inova Loudon Hospital Center, Medicare Provider No. 49-0043, fiscal year ending December 31, 2007;

16. Magee Womens Hospital of UPMC, Medicare Provider No. 39-0114, fiscal years ending June 30, 2008 and June 30, 2011;

17. Memorial Hermann Health System d/b/a Memorial Hermann Hospital System, Medicare Provider No. 45-0184, fiscal year ending June 30, 2010;

18. Memorial Hermann Health System d/b/a Memorial Hermann Katy Hospital, Medicare Provider No. 45-0847, fiscal year ending December 31, 2010;

19. Memorial Hermann Health System d/b/a Memorial Hermann Memorial City Medical Center, Medicare Provider No. 45-0610, fiscal year ending June 30, 2010;

20. Memorial Hermann Health System d/b/a Memorial Hermann Northeast, Medicare Provider No. 45-0684, fiscal year ending December 31, 2010;

21. Memorial Hermann Hospital System d/b/a Memorial Hermann-Texas Medical Center, Medicare Provider No. 45-0068, fiscal year ending June 30, 2010;

22. Morton Hospital, A Steward Family Hospital, Inc. d/b/a Morton Hospital, Medicare Provider No. 22-0073, fiscal years ending September 30, 2007, September 30, 2008 and September 30, 2009;

23. Morton Plant Hospital Association, Inc. d/b/a Morton F. Plant Hospital, Medicare Provider No. 10-0127, fiscal year ending December 31, 2010;

24. Morton Plant Hospital Association, Inc. d/b/a Morton Plant North Bay Hospital, Medicare Provider No. 10-0063, fiscal years ending December 31, 2010;

25. Mount Auburn Hospital, Medicare Provider No. 22-0002, fiscal years ending September 30, 2008 and September 30, 2009;

26. Newport Hospital, Medicare Provider No. 41-0006, fiscal years ending September 30, 2007 and September 30, 2009;

27. North Shore Medical Center, Inc., Medicare Provider No. 22-0035, fiscal year ending September 30, 2008;

28. Orlando Health, Inc., Medicare Provider No. 10-0006, fiscal years ending September 30, 2008 and September 30, 2010;

29. Orlando Health Central, Inc. d/b/a Health Central, Medicare Provider No. 10-0030, fiscal years ending September 30, 2008 and September 30, 2010;

30. Presbyterian Medical Center of the University of Pennsylvannia Health System d/b/a Prebyterian Medical Center, Medicare Provider No. 39-0223, fiscal year ending June 30, 2008;

31. Prospect CCMC, LLC d/b/a Crozer Chester Medical Center, Medicare Provider No. 39-0180, fiscal year ending June 30, 2008;

32. Prospect DCMH, LLC d/b/a Delaware County Memorial Hospital, Medicare Provider No. 39-0081, fiscal year ending June 30, 2008;

33. Quincy Medical Center, A Steward Family Hospital, Inc. d/b/a Quincy Medical Center, Medicare Provider No. 22-0067, fiscal years ending September 30, 2007, September 30, 2008 and September 30, 2009;

34.  Rhode Island Hospital, Medicare Provider No. 41-0007, fiscal years ending September 30, 2007 and September 30, 2009;

35.  South Florida Baptist Hospital, Inc., Medicare Provider No. 10-0132, fiscal year ending December 31, 2010;

36.  South Lake Hospital, Inc., Medicare Provider No. 10-0051, fiscal years ending September 30, 2008 and September 30, 2010;

37.  St. Anthony's Hospital, Inc., Medicare Provider No. 10-0067, fiscal year ending December 31, 2010;

38.  St. Joseph's Hospital, Inc., Medicare Provider No. 10-0075, fiscal year ending December 31, 2010;

39.  Steward Carney Hospital, Inc., Medicare Provider No. 22-0017, fiscal years ending September 30, 2007, September 30, 2008 and September 30, 2009;

40.  Steward Holy Family Hospital, Inc. d/b/a Holy Family Hospital, Medicare Provider No. 22-0080, fiscal years ending September 30, 2007, September 30, 2008 and September 30, 2009;

41.  Steward Good Samaritan Medical Center, Inc. d/b/a Good Samaritan Medical Center, Medicare Provider No. 22-0111, fiscal years ending September 30, 2007, September 30, 2008 and September 30, 2009;

42.  Steward St. Anne's Hospital Corporation d/b/a Steward St. Anne's Hospital, Medicare Provider No. 22-0020, fiscal years ending September 30, 2007, September 30, 2008 and September 30, 2009;

43.  Steward St. Elizabeth's Medical Center of Boston, Inc. d/b/a Steward St. Elizabeth's Medical Center, Medicare Provider No. 22-0036, fiscal years ending September 30, 2007, September 30, 2008 and September 30, 2009;

44.  SUNY Health Science Center at Brooklyn University Hospital of Brooklyn d/b/a University Hospital of Brooklyn, Medicare Provider No. 33-0350, fiscal year ending December 31, 2007;

45.  SUNY HealthScience Center at Syracuse, Medicare Provider No. 33-0241, fiscal year ending December 31, 2007;

46.  The Brigham and Women's Faulkner Hospital, Inc., d/b/a Faulkner Hospital, Medicare Provider No. 22-0119, fiscal year ending September 30, 2008;

47.  The Brigham and Women's Hospital, Inc., Medicare Provider No. 22-0110, fiscal year ending September 30, 2008;

48. The Chambersburg Hospital, Medicare Provider No. 39-0151, fiscal year ending June 30, 2011;

49. The Massachusetts General Hospital, Medicare Provider No. 22-0071, fiscal year ending September 30, 2008;

50. The Miriam Hospital, Medicare Provider No. 41-0012, fiscal years ending September 30, 2007 and September 30, 2009;

51. The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital, Medicare Provider No. 39-0226, fiscal year ending June 30, 2008;

52. The Trustees of the University of Pennsylvania d/b/a Hospital of the University of Pennsylvania, Medicare Provider No. 39-0111, fiscal year ending June 30, 2008;

53. Trustees of Mease Hospital, Inc. d/b/a Mease Hospital and Clinic, Medicare Provider No. 10-0043, fiscal year ending December 31, 2010;

54. Trustees of Mease Hospital, Inc. d/b/a Mease Hospital Countryside, Medicare Provider No. 10-0265, fiscal year ending December 31, 2010;

55. University Hospital at Stony Brook d/b/a Stony Brook University Hospital, Medicare Provider No. 33-0393, fiscal year ending December 31, 2007;

56. UPMC Altoona d/b/a Altoona Regional Health System, Medicare Provider No. 39-0073, fiscal years ending June 30, 2008 and June 30, 2011;

57. UPMC Braddock d/b/a UPMC-Braddock Hospital, Medicare Provider No. 39-0128, fiscal year ending June 30, 2008;

58. UPMC Hamot d/b/a Hamot Medical Center, Medicare Provider No. 39-0063, fiscal years ending June 30, 2008 and June 30, 2011;

59. UPMC Horizon, Medicare Provider No. 39-0178, fiscal years ending June 30, 2008 and June 30, 2011;

60. UPMC McKeesport, Medicare Provider No. 39-0002, fiscal years ending June 30, 2008 and June 30, 2011;

61. UPMC Mercy d/b/a UPMC Mercy Hospital, Medicare Provider No. 39-0028, fiscal years ending June 30, 2008 and June 30, 2011;

62. UPMC Northwest d/b/a UPMC Northwest Hospital, Medicare Provider No. 39-0091, fiscal year ending June 30, 2011;

63.  UPMC Presbyterian Shadyside Hospital, Medicare Provider No. 39-0164, fiscal years ending June 30, 2008 and June 30, 2011;

64.  UPMC South Side, Medicare Provider No. 39-0131, fiscal year ending June 30, 2008;

65.  Waynesboro Hospital, Medicare Provider No. 39-0138, fiscal year ending June 30, 2011;

66.  Westmoreland Regional Hospital, Medicare Provider No. 39-0145, fiscal years ending June 30, 2010 and June 30, 2011; and

67.  Winter Haven Hospital, Inc., Medicare Provider No. 10-0052, fiscal year ending September 30, 2010.

8.  The defendant is Thomas E. Price, in his official capacity as Secretary of the United States Department of Health and Human Services ("Secretary"), the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors as the context requires.

9.  The Centers for Medicare & Medicaid Services ("CMS") is the component of the Secretary's agency with responsibility for day-to-day operation and administration of the Medicare program.  CMS was formerly known as the Health Care Financing Administration. References to CMS herein are meant to refer to the agency and its predecessors.

## LEGAL AND REGULATORY BACKGROUND

### Medicare DSH Payment

10.  Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(l).  Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under the prospective payment system ("PPS").   42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412.   Under PPS, Medicare pays predetermined, standardized amounts per discharge, subject to certain payment adjustments.  *Id.*  One of the PPS payment adjustments is the DSH payment.  *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

11.    A hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates per discharge. *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106. A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage." *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1). The disproportionate patient percentage determines both a hospital's qualification for the DSH payment and the amount of the payment. *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R. § 412.106(d). The disproportionate patient percentage is defined as the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

12.    The first fraction that is used to compute the DSH payment is commonly known as the "Medicaid fraction." The statute defines the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [the Medicaid statute, title XIX of the Social Security Act], but who were *not entitled to benefits under part A* of [the Medicare statute, title XVIII of the Social Security Act], and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). As reflected in the italicized language above, the numerator of the Medicaid fraction consists of days for patients who were both eligible for medical assistance under the Medicaid statute and "not entitled to benefits under part A" of the Medicare statute.

13.    The other fraction that is used to compute the DSH payment is the "Medicare part A/SSI fraction" or "SSI fraction." The statute defines this fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under part A* of [the Medicare statute] and were entitled to supplemental security income benefits (excluding any State supplementation) . . . , and the denominator of which is the number of such

> hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under part A* of [the Medicare statute]...

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).  As the italicized language indicates, the Medicare part A/SSI fraction consists solely of days for patients who were "entitled to benefits under part A" of Medicare.  The denominator includes all Medicare part A days, whereas the numerator includes only those part A days for patients who are also entitled to social security income ("SSI") benefits under title XVI of the Social Security Act.  The Medicare part A/SSI fraction is computed for each federal fiscal year by CMS, and must be used to compute a hospital's DSH payment for the cost reporting period beginning in the federal fiscal year.  42 C.F.R. §§ 412.106(b)(2)-(3).

## Medicare Part C

14.    Section 4001 of the Balanced Budget Act of 1997, Pub. Law No. 105-33, added a new part C to the Medicare statute to establish a Medicare program that was originally called the Medicare+Choice program and is now called Medicare Advantage.[1]  A Medicare beneficiary can elect to receive Medicare benefits either through the original fee-for-service program under Medicare parts A and B, or through enrollment in a Medicare Advantage plan under Medicare part C.  42 U.S.C. § 1395w-21(a)(1); 42 C.F.R. § 422.50; *see also* 63 Fed. Reg. 34,968, 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B ... may elect to receive benefits through *either* the existing Medicare fee-for-service program or a Part C M+C plan.") (emphasis added).

15.    Prior to the 2004 rulemaking at issue, in which the agency attempted to adopt a new policy on the treatment of part C days in the Medicare DSH payment calculation, "the

---

[1] The Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (Pub. L. 108-173), amended part C and renamed it.

Secretary treated Part C patients as *not* entitled to benefits under Part A."  *Allina I*, 746 F.3d at

1106.  The pre-2004 regulation limited the Medicare part A/SSI fraction to Medicare patient days

that were covered, or paid, by Medicare part A and included other Medicare patient days (not

covered under part A) in the numerator of the Medicaid fraction to the extent that those patients

were also eligible for Medicaid.  *See* 42 C.F.R. § 412.106(b)(2)(i) (2003); *see also* 42 C.F.R.

§ 409.3 (defining "covered" as  services for which payment is authorized).  As the Secretary

explained when he adopted it, the pre-2004 regulation mandated that only "covered Medicare

Part A inpatient days" be included in the part A/SSI fraction.  51 Fed. Reg. 16,772, 16,788 (May

6, 1986); *see also* 51 Fed. Reg. 31,454, 31,460-61 (Sept. 3, 1986) (stating that limiting the

Medicaid fraction to days where "the Medicaid program is the primary payor" was "consistent

with" the part A/SSI fraction being limited to "covered days"); *Catholic Health Initiatives-Iowa

Corp. v. Sebelius*, 718 F.3d 914, 921 n.5 (D.C. Cir. 2013) (noting that the pre-2004 regulation

unambiguously limited the part A/SSI fraction to "covered Medicare Part A inpatient days").

16.     Further, written guidance prior to 2004 repeatedly expressed the Secretary's

policy that part C days, as days for which patients were not entitled to part A payment, were to be

excluded from the part A/SSI fraction.  This guidance included instructions to hospitals and

program memoranda transmitting the part A/SSI fractions on an annual basis.  *See, e.g*.,

*Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 15 (D.C. Cir. 2011) (describing written guidance).

17.     The agency's consistent policy and practice, before the adoption of the 2004 rule,

was to treat part C days as *not* part A days.  *Northeast Hosp.*, 657 F.3d at 16-17 (policy

announced in 2004 "contradicts [Secretary's] former practice of excluding M+C days from the

Medicare fraction"); *Sw. Consulting DSH Medicare + Choice Days Grps. v. BlueCross

BlueShield Ass'n,* PRRB  Dec.  No.  2010–D52,  2010  WL  4211391,  at  *12  (Sept.  30,

2010), *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 82,679 (reviewing evidence that from 1999 to 2004, the Secretary "never count[ed] M+C days in the [Medicare] fraction except rarely, and then by mistake").

18.    In a 2003 proposed rule, the Secretary proposed "to clarify" his long-held position that "once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage."  68 Fed. Reg. 27,154, 27,208 (May 19, 2003).  Further, the agency explained that "[t]hese days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for a [part C] beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction."  *Id.*  The Secretary explained that "once a beneficiary has elected to join a Medicare Advantage plan, that beneficiary's benefits are no longer administered under Part A."  *Id.*

19.    In the preamble to a final rule adopted in 2004, however, the Secretary reversed course and "abruptly announced a change in policy."  *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 78 (D.D.C. 2012), *aff'd*, 746 F.3d at 1107-10.  That 2004 rule announced that the Secretary would "adopt a policy" to include part C days in the Medicare part A/SSI fraction and exclude them from the Medicaid fraction effective October 1, 2004.  69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004); *see also Northeast Hosp.*, 657 F.3d at 16 ("[I]n the 2004 rulemaking [the Secretary] announced that she was 'adopting a policy' of counting [part C] days in the Medicare fraction").

20.    In the 2004 final rule, the Secretary amended the regulation text by deleting the word "covered."  69 Fed. Reg. at 49,246.  When CMS initially transmitted the part A/SSI fractions for federal fiscal years 2005 and 2006, however, those fractions continued to exclude

part C days.  *See* CMS Pub. 100-04, Transmittal 1091 (Oct. 27, 2006), *reprinted in* MEDICARE &
MEDICAID GUIDE (CCH) ¶ 156,277 (transmitting federal fiscal year 2005 part A/SSI fractions
and specifying that the fractions include only "covered Medicare days," and referring to the ratio
of SSI days and "covered Medicare days" as "the ratio of Medicare Part A patient days
attributable to SSI recipients"); CMS Pub. 100-04, Transmittal 1396 (Dec. 14, 2007), *reprinted
in id.* ¶ 156,930 (same for federal fiscal year 2006 fractions).

21.    In July 2007, CMS issued a revision to a Medicare program manual, with a
"purported 'effective date' of October 1, 2006," that permitted hospitals to submit the data
necessary to implement the new policy regarding part C days.  *Allina Health Servs.*, 904 F. Supp.
2d at 82.  Thereafter, in August 2007, the Secretary further amended the text of the DSH
regulation governing part C days without affording hospitals prior notice or opportunity for
comment.  72 Fed. Reg. 47,130, 47,384 (Aug. 22, 2007).  Following the amendments in 2004
and 2007, the regulation provided that the part A/SSI fraction includes all patient days (not just
"covered" days) for "patients entitled to Medicare Part A (*or Medicare Advantage (Part C)*)."
*Id*. at 47,411 (amending §§ 412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added).  The amendment
of the regulation was made effective October 1, 2007, the beginning of federal fiscal year 2008.
*Id.* at 47,130; *see also Allina Health Servs.*, 904 F. Supp. 2d at 82.

## The *Allina I* Litigation

22.    In July 2009, the Secretary first published part A/SSI fractions for hospital cost
reporting periods beginning in federal fiscal year 2007.  These fractions for the first time
included part C days.

23.    In *Allina I*, hospitals challenged the applicability of the 2004 rule on the treatment
of part C days in the DSH payment calculation for cost reporting periods beginning in federal

fiscal year 2007, contending, among other things, that the abrupt reversal in policy did not meet notice and comment requirements and was not the product of reasoned decision making because the agency failed to acknowledge or explain its departure from past policy.

24.    This Court agreed and held that the policy announced in the 2004 final rule regarding part C days was not the logical outgrowth of the 2003 proposed rule.  904 F. Supp. 2d at 89-92.  This Court also held that the "cursory explanation in the 2004 Final Rule failed to meet the requirements of the APA" because "the Secretary[] fail[ed] to acknowledge her 'about-face,'" and "her reasoning for the change was brief and unconvincing."  *Id.* at 93 (quoting *Northeast Hosp.*, 657 F.3d at 15).  Accordingly, this Court concluded that "[t]he portion of the 2004 Final Rule … that announced the Secretary's interpretation of the Medicare Disproportionate Share Hospital Fraction, as codified in 2007 at 42 C.F.R. § 412.106(b)(2) and as further modified in 2010, will be vacated, and the case will be remanded to the Secretary for further action consistent with this Opinion."  *Id.* at 95.

25.    While the Secretary's appeal from this Court's decision in *Allina I* was pending before the Court of Appeals, the agency engaged in a new rulemaking on the treatment of part C days effective only prospectively, beginning October 1, 2013.  In that rulemaking, the agency "proposed to readopt the policy of counting the days of patients enrolled in [part C] plans in the Medicare fraction" "in an abundance of caution."  78 Fed. Reg. 50,496, 50,615 (Aug. 19, 2013).  Accordingly, effective as of October 1, 2013, the rule governing the DSH calculation is the same as the 2004 rule had been.  *See id.* at 50,619 (rule "readopt[ion]" applies to "FY 2014 and subsequent years" only).

26.    On April 1, 2014, the D.C. Circuit affirmed this Court's *Allina I* decision on the merits, "agree[ing] with the district court that the Secretary's final rule was not a logical

outgrowth of the proposed rule."  746 F.3d at 1109.  Because this procedural failure was a sufficient basis to vacate the rule, the D.C. Circuit did not reach the arbitrariness of the Secretary's explanation.  *Id.* at 1111.

27.  With respect to remedy, the D.C. Circuit held that this Court "correctly concluded that vacatur was warranted."  *Id.*  The court reversed, however, a part of this Court's order that required "the Secretary to recalculate the hospitals' reimbursements 'without using the interpretation set forth in the 2004 Final Rule.'"  *Id.* (quoting the Post-Judgment Order).  The Court of Appeals instead remanded, noting that the "question whether the Secretary could reach the same result" on remand as would have applied under the vacated rule "was not before the district court" and therefore this Court should have simply "remand[ed] after identifying the error."  *Id.* at 1111.

## Review of Medicare Payment Determinations

28.  After the close of each fiscal year, a hospital is required to file a "cost report" with a Medicare Administrative Contractor designated by the Secretary.  42 C.F.R. §§ 413.20, 413.24.

29.  The Medicare Administrative Contractor analyzes a hospital's cost report and issues a year-end determination as to the amount of Medicare program reimbursement due the hospital for services furnished to Medicare patients during the fiscal year covered by the cost report.  *See* 42 C.F.R. § 405.1803; *see also In re Medicare Reimbursement Litig.,* 309 F. Supp. 2d 89, 92 (D.D.C. 2004), *aff'd*, 414 F.3d 7 (D.C. Cir. 2005).

30.  A hospital may appeal a Medicare Administrative Contractor's determination as to the total amount of Medicare program reimbursement due the hospital for the fiscal year covered by a cost report to the Secretary's Provider Reimbursement Review Board.  *See* 42 U.S.C. § 1395oo(a)(1); 42 C.F.R. §§ 405.1835–405.1877.

31.    The Medicare statute authorizes the Provider Reimbursement Review Board to determine that it is without authority to decide the question of law or regulations relevant to a matter in controversy in an appeal before the Board and grant the right to expedited judicial review. 42 U.S.C. § 1395oo(f)(1).  Pursuant to the Secretary's regulations, the Board is bound by agency rules and rulings, like the 2004 rule at issue.   42 C.F.R. § 405.1867.   If the Board determines that expedited judicial review is appropriate, then the hospital may commence a civil action in this Court within 60 days of the date on which the hospital receives notification of the Board's determination.  *Id.*

## FACTS SPECIFIC TO THIS CASE

32.    Each of the 67 plaintiff hospitals received a notice of program reimbursement including a final DSH payment determination for each of the cost reporting periods at issue.

33.    Each of the plaintiff hospitals timely appealed the calculation of its Medicare DSH payment to the Provider Reimbursement Review Board.

34.    Each of the plaintiff hospitals was involved in one or more of 46 "group" appeals to the Provider Reimbursement Review Board contesting the calculation of the Medicare DSH payment including part C days in the Medicare part A/SSI fraction and excluding them from the numerator of the Medicaid fraction.

35.    On March 20, 2017, the plaintiff hospitals requested that the Board grant expedited judicial review with respect to the DSH part C days issue pending in their 46 group appeals at issue.

36.    By letters dated April 12, 2017, the Provider Reimbursement Review Board found that the Secretary has not acquiesced in in the decision in *Allina I*, that it was bound by the terms of the DSH regulation regarding the treatment of part C days, as amended in the 2004 rule, 42

C.F.R. § 412.106(b)(2)(i)(B) and (b)(2)(iii)(B), and that the Board therefore was without authority to decide the validity of the DSH part C policy adopted in the 2004 rule and applied in the payment determinations at issue.

37.     By the filing of this Complaint, the plaintiff hospitals have timely commenced this action for expedited judicial review under 42 U.S.C. § 1395oo(f)(1).

## ASSIGNMENT OF ERRORS

38.     The Medicare statute provides for judicial review of the question presented here "pursuant to the applicable provisions under chapter 7 of title 5," *i.e.*, the APA.   42 U.S.C. § 1395oo(f)(l).

39.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]"  5 U.S.C. § 706(2).

40.     The Secretary's calculation of the plaintiff hospitals' DSH payments is procedurally invalid under the Medicare Act, 42 U.S.C. § 1395hh, and the APA, 5 U.S.C. § 553, including for the reasons described below.

41.     The Secretary's DSH determinations are procedurally invalid under the Medicare Act, 42 U.S.C. § 1395hh.   The Medicare Act requires notice and comment rulemaking for a "rule," a "requirement" or a "statement of policy" that "establishes or changes a substantive legal standard governing … the payment for services."   42 U.S.C. § 1395hh(a)(2).   Further, the Medicare Act provides that if a final rule is not a logical outgrowth of a proposed rule, then it "shall not take effect" until there is further opportunity for comment and publication again as a

final rule. *Id*. § 1395hh(a)(4). This Court has already ruled, and the Court of Appeals has affirmed this Court's ruling, that the 2004 rule was not a logical outgrowth of the proposed rule.

42.     The Secretary's DSH payment determinations are invalid under the APA because they conflict with the rule, policy and practice that was in effect before the adoption of the invalid 2004 rule and is reinstated upon invalidation of that rule. *Action on Smoking & Health v. Civil Aeronautics Bd.,* 713 F.2d 795, 797-98 (D.C. Cir. 1983) ("[B]y vacating or rescinding [one rule], the judgment of this court had the effect of reinstating the rules previously in force."). The pre-2004 rule excluded part C days from the part A/SSI fraction and included them in the Medicaid fraction because it permitted only "covered Medicare Part A inpatient days" to be included in the part A/SSI fraction. The pre-2004 rule, therefore, is binding on the Secretary. It is "'axiomatic that an agency must adhere to its own regulations.'" *Exportal Ltda v. United States*, 902 F.2d 45, 49 (D.C. Cir. 1990) (quoting *Brock v. Cathedral Bluffs Shale Oil Co*., 796 F.2d 533, 536 (D.C. Cir. 1986) (Scalia, J.)). "[U]nless and until [an agency] amends or repeals a valid legislative rule or regulation, [the] agency is bound by such a rule or regulation," *Am. Fed'n of Gov't Emps. v. Fed. Labor Relations Auth*., 777 F.2d 751, 759 (D.C. Cir. 1985).

43.     The Secretary's DSH payment determinations are substantively invalid because the agency did not "consider the matter in a detailed and reasoned fashion" in adopting the 2004 rule (or otherwise) and the part C days policy adopted in that rule is not "consistent with the underlying statutory scheme in a substantive sense." *ITT Indus., Inc. v. NLRB*, 251 F.3d 995, 1004 (D.C. Cir. 2001). Further, the Secretary has not acknowledged that the policy adopted in the 2004 rule departed from the pre-existing rule and practice regarding the treatment of part C days in the DSH payment and has not explained any good reason for that change. *See FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009). Likewise, the Secretary has never

acknowledged the enormous adverse financial impact on hospitals of the 2004 policy change, nor has the Secretary ever explained why the policy change is appropriate despite that adverse impact on the nation's safety-net hospitals, like the plaintiff hospitals, that shoulder the financial burden of treating a disproportionate share of low-income patients.

44.    The Secretary's new policy treating part C days as part A days is also contrary to the intent of Congress in enacting the DSH statute and fails the reasonableness test under *Chevron* step two.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837 (1984).  The policy "conflict[s] with the policy judgments that undergird the statutory scheme." *Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 416 (D.C. Cir. 1994), and is impermissible, *see Goldstein v. SEC*, 451 F.3d 873, 883 (D.C. Cir. 2006) (rejecting policy under *Chevron* step two where it was not "rational when viewed in light of the policy goals underlying the" applicable statute).

## REQUEST FOR RELIEF

45.    The plaintiff hospitals request an Order:

A.    declaring invalid and setting aside the Secretary's final decision including part C days in the part A/SSI fraction and excluding part C patient days from the numerator of the Medicaid fraction used to calculate the plaintiff hospitals' Medicare DSH calculations for the cost reporting periods at issue;

B.    directing the Secretary to recalculate the plaintiff hospitals' DSH payments consistent with that Order and to make prompt payment of any additional amounts due the plaintiff hospitals, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

C.    requiring the Secretary to pay legal fees and cost of suit incurred by the plaintiff hospitals; and

D.    providing such other relief as the Court may consider appropriate.

Respectfully Submitted,

/s/ Christopher L. Keough
Christopher L. Keough
   DC Bar No. 456567
Alex J. Talley
   DC Bar No. 1020488
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Phone: (202) 887-4038
Fax: (202) 887-4288
ckeough@akingump.com

Counsel for Plaintiffs

Dated:   June 9, 2017